IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Chester O'Quinn (K92939), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23 C 50276 |
| v. | ) | |
| | ) | Hon. Iain D. Johnston |
| Terry Williams, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Chester O'Quinn is an Illinois prisoner, who uses a cane and suffers from "physical disability and mental challenges." He initiated this lawsuit *pro se* under 42 U.S.C. § 1983 concerning the manner in which he was transported between Dixon Correctional Center and University of Illinois Hospital in Chicago, Illinois, on December 20, 2022. According to O'Quinn, the transport vehicle was not appropriate for his physical needs, so he slid around inside the vehicle and hit his head several times. At some point, he "went unconscious and did not wake up" until he hit his head again. He also allegedly experienced "back & neck injuries with memory loss" along with "nose bleeds, anxiety attacks, [and] nightmares" following the transport.

The Court screened the operative complaint under 28 U.S.C. § 1915A and allowed an Eighth Amendment claim to proceed against Defendants Norris, Cassiday, Williams, and Craft. Dkt. 16, Dec. 1, 2023 Order. Norris and Cassiday allegedly were the drivers of the transport vehicle. Williams and Craft allegedly were responsible for the vehicle assignment.

Before the Court is Defendants' motion for summary judgment. For the reasons discussed below, the Court denies the motion as to Defendants Norris and Cassiday and grants the motion as to Defendants Williams and Craft.

**Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Local Rule 56.1 requires the moving party to submit a motion, supporting memorandum of law, and statement of material facts accompanied by cited evidentiary material. N.D. Ill. L.R. 56.1(a), (d). The opposing party then must respond to the moving party's motion and statement of facts. N.D. Ill. L.R. 56.1(b), (e). The opposing party's response to the movant's statement of facts "must consist of numbered paragraphs corresponding to the numbered paragraphs in the [movant's] statement," N.D. Ill. L.R. 56.1(e)(1), and "[e]ach response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact[,]" N.D. Ill. L.R. 56.1(e)(2). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.* In addition, if the opposing party wants the Court to consider facts not presented by the moving party, the opposing party also must submit a "statement of additional material facts" consisting of "concise numbered paragraphs" and attaching any additional evidentiary material. L.R. 56.1(b)(3), (d).

This Court held a telephone conference on April 16, 2025, during which the Court explained to O'Quinn the summary judgment procedures, including the requirements of Local Rule 56.1. Dkt. 75. Defendants also provided O'Quinn with a "Notice to Unrepresented Litigants Opposing Summary Judgment," setting forth the procedures for opposing summary judgment and explaining that O'Quinn must "file, as separate documents" a response to the defendant's statement of facts, a statement of additional facts, and a memorandum of law. Dkt. 79.

Even so, O'Quinn filed a single document in response to Defendants' submissions, titled "Plaintiff's Response in Opposition for/to Defendants Motion for Summary Judgment with

2

Memorandum of Law included, and Personal Affidavit." Dkt. 82. O'Quinn did not submit a separate response to the Defendants' statement of facts. He also did not submit a separate statement of additional facts. Instead, his response is interspersed with challenges to the Defendants' facts that are not supported by citations to evidence. The same, too, for additional facts.

The Court may require strict compliance with Local Rule 56.1 from all parties. *See Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) (citing *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001)). At the same time, some (but not all) of the facts in O'Quinn's response concern matters to which he could testify based on his personal knowledge. Defendants rely heavily on O'Quinn's testimony and, for the most part, they do not dispute O'Quinn's version of the events giving rise to his claims. The Court therefore will consider facts identified in O'Quinn's response so long as the facts are relevant, admissible through O'Quinn's testimony, and consistent with his deposition testimony. *See Adams v. Falkner*, No. 18 C 8223, 2021 WL 2681891, at *1 (N.D. Ill. June 30, 2021) (Kennelly, J.) (discussing discretion to overlook noncompliance with local rules); *see also Bentz v. Hardy*, 638 F. App'x 535, 536 (7th Cir. 2016) (explaining that failure to properly respond to movant's statement of facts is not fatal where movant principally relies on non-movant's deposition testimony and non-movant's version of events is undisputed).

## Background

Illinois prisoner Chester O'Quinn has keloid scars as a result of having been stabbed years ago. Dkt. 77, Defs. L.R. 56.1 Stmt. of Material Facts (DSOF) ¶ 6. He is in custody of the Illinois Department of Corrections and has been housed at the Dixon Correctional Center for seven or eight years. DSOF ¶ 1.

3

On December 20, 2022, O'Quinn was transported from Dixon to the University of Illinois Hospital in Chicago for treatment of his keloid scars. DSOF ¶ 7. The Duty Roster for that day reflects that O'Quinn was transported in Vehicle #131, with Defendant Norris assigned as the driver and Defendant Cassiday assigned as the passenger and weapons officer. DSOF ¶ 8. O'Quinn testified at his deposition, however, that Cassiday drove the vehicle from Dixon to Chicago, and Norris drove the vehicle back to Dixon from Chicago. DSOF ¶ 14. Defendants Williams and Craft did not drive the transport vehicle. *See* DSOF ¶¶ 10, 11.

Photographs of Vehicle #131 depict a full-sized van with a cage in the back. DSOF ¶¶ 9, 12. According to O'Quinn, when he first saw the vehicle to which he was assigned, he told "the Defendants" that he was "disable[d]" and asked for another van. Pl. Resp. at 2. O'Quinn, however, disputes that the photographs produced by Defendants accurately depict the vehicle in which he was transported. Pl. Resp. at 6. O'Quinn recalls the van as being more "tan" and not having a side door. Pl. Resp. at 6.

O'Quinn entered the transport vehicle through the rear doors and rode in the rear compartment (which was caged). *See* DSOF ¶ 12. There was a bench in the cage. DSOF ¶¶ 12, 13. O'Quinn sat on the bench, but he did not have a seatbelt because the seatbelts were inoperable. DSOF ¶ 13. Visibility from the caged area in the back of the van was limited. *See* DSOF ¶¶ 9, 15.

O'Quinn testified during his deposition that the ride to and from the hospital was bumpy and that Defendants Norris and Cassiday were hitting a lot of potholes and speeding. DSOF ¶ 15.[1] O'Quinn elaborated that he believed the officers were "speeding" and "driving like a bat out of

---

[1] The deposition page numbers cited by Defendants in their statement of facts often do not correspond to the quoted testimony, nor do the highlighted portions of the transcript necessarily correspond to the testimony quoted in Defendants' statement of facts. The Court therefore has considered testimony that it was required to search through to find the portions of Plaintiff's deposition that correspond to the citations in Defendants' statements of fact.

4

hell" because, when the traffic "slow[ed] up," the vehicle stopped fast. DSOF ¶ 15 (quoting Ex. 1 to DSOF, Pl. Dep. Tr. at 27:17-28:1). As a result, O'Quinn would slide back and forth on the bench and "crash[] into the dag gone cage[.]" DSOF ¶ 15 (quoting Pl. Dep. Tr. at 28:1-3); DSOF ¶ 16. O'Quinn also hit his head on the cage but could not recall how many times he hit his head. DSOF ¶ 16. He explained that the cage "was not tall enough so if [he] didn't bend [his] neck down toward [his] chest and hold it there and scoop [sic] down [he] kept hitting [his] head." Pl. Dep. Tr. at 35:22-36:1; *see* Ex. 3 to DSOF, pg. 7. He hit the top of his head on the top of the cage and the side of his head on the side of the cage because he "would go sliding from one end to the other end." Pl. Dep. Tr. 36:2-6. At one point on the way to the hospital, he lost consciousness after he hit his head. Pl. Resp. at 4; Pl. Dep. Tr. at 44:13-16. He could not use his hands or feet to brace himself because he was handcuffed and shackled. Pl. Resp. at 5. However, O'Quinn conceded, hitting bumps, speeding, and stopping quickly were unavoidable: "They had no choice. That's how traffic was. Traffic is murder." DSOF ¶ 15 (quoting Pl. Dep. Tr. at 28:17-20).

      O'Quinn was examined by a doctor on arrival at the hospital. DSOF ¶ 17. The doctor asked O'Quinn if he had a headache, vision changes, or dizziness, which O'Quinn denied. DSOF ¶ 17. O'Quinn explained during his deposition that he did not answer the doctor's questions honestly because "[y]ou cannot tell them anything is wrong with you because if you do they won't see you for what you come in there for." DSOF ¶ 18; Pl. Dep. Tr. at 49:16-24.

      This lawsuit followed. Plaintiff alleged in the operative complaint that he is over six feet tall and weighs 270 pounds. Dkt. 15; *see* Pl. Resp. at 11. He uses a cane to ambulate, has hand and wrist injuries, has sustained multiple head injuries, and is mentally ill. Dkt. 15. He allegedly was forced into the transport vehicle on December 20, 2022, where he slid around and hit his head. *Id.*

Based on O'Quinn's allegations that Norris and Cassiday drove the van and that that Williams and Craft were responsible for the van assignment, the Court allowed the pleading to proceed past screening on an Eighth Amendment claim that Defendants were deliberately indifferent to O'Quinn's safety when they used (what O'Quinn characterized as) a "seg van" to transport him on December 20, 2022. *See* Dkt. 16, Dec. 1, 2023 Order. The Court dismissed all other claims. *Id.*

Defendants' motion for summary judgment is before the Court. Dkt. 76-79. Defendants argue that they are entitled to summary judgment in their favor on three bases: (1) the Defendants' driving did not rise to the level of a constitutional violation; (2) inmates do not have a constitutional right to seatbelts during transport; and (3) O'Quinn lacks evidence of Defendants Williams's and Craft's involvement in the events of December 20, 2022. Dkt. 78.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court considers relevant evidence in the light most favorable to the non-moving party and draws reasonable inferences in the non-moving party's favor. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (citation omitted). The Court does not weigh the evidence, judge witness credibility, or determine what is true. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). It determines only whether there is an issue of triable fact. *Id.*

### A. Defendants Norris and Cassiday

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (citations omitted). Prison officials may be liable for a violation of the Eighth Amendment when they knew that the prisoner "faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citing *Farmer,* 511 U.S. at 847).

Citing traffic accident cases, Defendants Norris and Cassiday—the drivers of the transport vehicle, according to O'Quinn—argue that they are entitled to summary judgment because the undisputed facts show, at most, that they drove negligently. Dkt. 78, pg. 7-9. Defendants present the lack of seatbelts as a separate issue. *Id.*, pg. 10. The relevant question, however, is not whether individual components of the transport violated the Constitution. The relevant question is whether the manner in which O'Quinn was transported as a whole put him at substantial risk of serious harm and whether Defendants failed to take reasonable measures to address the risk.

It is true that the Constitution does not guarantee seatbelts during transport, so the failure to provide a seatbelt generally is not enough to establish a claim under section 1983. *Dale v. Agresta*, 771 F. App'x 659, 661 (7th Cir. 2019) ("Neither the Supreme Court nor this court has ruled that transporting an inmate without a seatbelt creates an intolerable risk of harm."). There are instances, though, where courts have found that the lack of a seatbelt along with other exacerbating circumstances—such as reckless driving—may violate the Constitution. *See, e.g., Brown v. Fortner*, 518 F.3d 552, 559 (8th Cir. 2008) (finding driver's refusal to fasten inmate's seatbelt, driving in excess of speed limit, and following too closely (among other things) sufficient

7

to show deliberate indifference to inmate's safety); *see also Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (concluding that allegations that inmate sustained injury because driver of prison van stopped abruptly even though he knew inmate was shackled, handcuffed, and not secured with a seatbelt presented "a nonfrivolous argument" that driver violated the Eighth Amendment); *Taylor v. Stateville Dep't of Corrs.*, No. 10 C 3700, 2010 WL 5014185, at *1 (N.D. Ill. Dec. 1, 2010) (explaining that allegations that inmates repeatedly "slammed" into each other during transport, with enough force to cause injury, suggests reckless driving).

Here, the undisputed facts construed in O'Quinn's favor show that he requires a cane to walk; he was placed in a cage that required him to sit stooped over on a bench; he was not secured in the vehicle; and he was unable to brace himself because he was handcuffed and shackled. Defendants ignored his request for a different vehicle. The driver or drivers of the transport vehicle then drove, braked, and hit pot holes in a manner that caused O'Quinn to slide around in the cage and hit his head with enough force to knock him out. Traffic and road conditions admittedly were less than ideal. But a jury could nevertheless conclude from these facts that the driver or drivers were deliberately indifferent to O'Quinn's safety.

Whether Defendant Norris's and Cassiday's conduct was reasonable is a disputed question of fact. Based on the evidence before the Court, a reasonable jury could find that Defendants' driving, in light of O'Quinn's medical needs, was so reckless as to constitute deliberate indifference. *See Brown,* 518 F.3d at 559 (explaining that reasonable jury could find van driver's refusal to fasten inmate's seatbelt, driving in excess of speed limit, and following too closely (among other things) demonstrated deliberate indifference). A reasonable jury also could find that Defendants were merely negligent or, even, that they took reasonable steps to ensure O'Quinn's

safety given the traffic and road conditions on December 20, 2022. The question, however, remains one for the jury. Consequently, Defendants Norris and Cassiday are not entitled to judgment as a matter of law.

### B. Defendants Williams and Craft

Defendants Williams and Craft argue that they are entitled to summary judgment because O'Quinn cannot establish their personal involvement in a constitutional violation. A prison official may be held liable only for his own conduct under section 1983. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (citations omitted). A claim under section 1983 cannot be based on a theory of *respondeat superior* liability. *Id.* This means that a supervisory official can only be found liable under section 1983 if he was personally involved in a constitutional violation. *Id.*

O'Quinn attempts to establish liability against Defendants Williams and Craft by arguing that Officers Norris and Cassiday told him that Williams and Craft "signed-off" on the van. Pl. Resp. at 2; *see* DSOF ¶ 10. But O'Quinn's statement that "Norris and Cassiday said Major Kraft [sic] and the Warden signed-off on [the van]" is inadmissible hearsay, which cannot be used to defeat a motion for summary judgment. *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) (citing *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("A party may not rely on inadmissible hearsay to avoid summary judgment.").

In addition, even if Williams or Craft were responsible for assigning O'Quinn to the vehicle in which he was transported, the mere fact that O'Quinn was assigned to a particular vehicle—in this case, a van with a cage and without seatbelts—is not enough to establish that Williams or Craft participated in an Eighth Amendment violation. *See Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012) (holding that failure of supervisory prison officials to provide seatbelts to inmates riding in prison

9

vehicles, standing alone, does not violate an inmate's Eighth Amendment rights); *Dale*, 771 F. App'x at 661 ("failing to seatbelt a shackled inmate does not pose a risk of serious harm" absent "reckless driving or other exacerbating circumstances"). O'Quinn offered nothing but his own testimony to show that Williams and Craft "knew" he was "disabled" and would be at risk of harm in the van, over and above the constitutionally tolerable risk of inmates riding in transport vehicles without seatbelts. O'Quinn's speculation about what Williams and Craft "knew" is not enough to defeat summary judgment. *See Whitaker v. Dempsey*, 144 F.4th 908, 920 (7th Cir. 2025) (explaining that, although non-movant "is entitled to all reasonable inferences in his favor, [] mere speculation or conjecture cannot defeat summary judgment").

## **CONCLUSION**

The Court grants summary judgment for Defendants Williams and Craft. The Clerk is directed to enter judgment in favor of Williams and Craft. The Court denies summary judgment as to Defendants Norris and Cassiday. This case will proceed against Norris and Cassiday.

Date: August 21, 2025    By:    _____
                                        Iain D. Johnston
                                        United States District Judge